IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

SUSAN DAVIS,                                             CV. 05-125 PK

            Plaintiff,                          FINDINGS AND
                                                RECOMMENDATION

      v.

JOANNE B. BARNHART
Commissioner of Social Security,

            Defendant.

PAPAK, Magistrate Judge:

## INTRODUCTION

Plaintiff Susan Davis ("Davis"), brings this action pursuant to the Social Security Act, 42

USC § 405(g), to obtain judicial review of a final decision of the Commissioner of the Social

Security Administration ("Commissioner") denying her claim for Disability Insurance Benefits

("DIB"). For the reasons set forth below, the decision of the Commissioner should be  remanded

for further administrative proceedings .

## PROCEDURAL BACKGROUND

 1  - FINDINGS AND RECOMMENDATION

Davis filed an application for benefits on December 31, 2001 alleging disability since

August 27, 2001, due to degenerative disc disease, left tibia fracture, borderline intellectual

functioning, major depressive disorder, personality disorder and somatoform disorder.   Her

application was denied initially and upon reconsideration.  On February 26, 2003 a hearing was

held before an Administrative Law Judge ("ALJ").   A supplemental hearing was held on July 2,

2003.   In a decision dated August 20, 2003 the ALJ found Davis was not entitled to benefits.

On December 2, 2004, the Appeals Council denied Davis's request for  review, making the

ALJ's decision the final decision of the Commissioner.  Davis now seeks judicial review of the

Commissioner's decision.

## STANDARDS

A claimant is disabled if he or she is unable "to engage in any substantial gainful activity

by reason of any medically determinable physical or mental impairment which . . . has lasted or

can be expected to last for a continuous period of not less than 12 months."  42 USC

§ 423(d)(1)(A).  The initial burden of proof rests upon the claimant to establish his or her

disability.  *Roberts v. Shalala*, 66 F3d 179, 182 (9th Cir 1995), *cert. denied*, 517 US 1122 (1996).

The Commissioner bears the burden of developing the record.  *DeLorme v. Sullivan*, 924 F2d

841, 849 (9th Cir 1991).

The district court must affirm the Commissioner's decision if it is based on proper legal

standards and the findings are supported by substantial evidence in the record as a whole.  42

USC § 405(g); *see also Andrews v. Shalala*, 53 F3d 1035, 1039 (9th Cir 1995).  "Substantial

evidence means more than a mere scintilla but less than a preponderance; it is such relevant

evidence as a reasonable mind might accept as adequate to support a conclusion."  *Andrews*, 53

F3d at 1039.  The court must weigh all of the evidence, whether it supports or detracts from the

Commissioner's decision.  *Martinez v. Heckler*, 807 F2d 771, 772 (9th Cir 1986).  The

Commissioner's decision must be upheld, however,  if  "the evidence is susceptible to more than

one rational interpretation."  *Andrews*, 53 F3d at 1039-40.

## DISABILITY ANALYSIS

The ALJ engages in a five-step sequential inquiry to determine whether a claimant is

disabled within the meaning of the Act.  20 CFR §§ 404.1520, 416.920.  Below is a summary

of the five steps, which also are described in *Tackett v. Apfel*, 180 F3d 1094, 1098-99 (9th Cir

1999):

Step One.  The Commissioner determines whether the claimant is engaged in substantial

gainful activity.  If so, the claimant is not disabled.  If the claimant is not engaged in substantial

gainful activity, the Commissioner proceeds to evaluate the claimant's case under step two.  20

CFR §§ 404.1520(b), 416.920(b).

Step Two.  The Commissioner determines whether the claimant has one or more severe

impairment.  If not, the claimant is not disabled.  If the claimant has a severe impairment, the

Commissioner proceeds to evaluate the claimant's case under step three.  20 CFR

§§ 404.1520(c), 416.920(c).

Step Three.  Because disability cannot be based solely on a severe impairment, the

Commissioner next determines whether the claimant's impairment "meets or equals" one of the

impairments listed in the Social Security Administration ("SSA") regulations, 20 CFR Part 404,

Subpart P, Appendix 1.  If so, the the claimant is disabled.  If the claimant's impairment does not

meet or equal one listed in the regulations, the Commissioner proceeds to step four.  20 CFR

§§ 404.1520(d), 416.920(d).

Step Four.  The Commissioner determines whether the claimant is able to perform work

he or she has done in the past.  If so, the claimant is not disabled.  If the claimant demonstrates

he or she cannot do work performed in the past, the Commissioner proceeds to step five.

20 CFR §§ 404.1520(e), 416.920(e).

Step Five.  The Commissioner determines whether the claimant is able to do any other

work.  If not, the claimant is disabled.  If the Commissioner finds the claimant is able to do other

work, the Commissioner must show a significant number of jobs exist in the national economy

that the claimant can do.  The Commissioner may satisfy this burden through the testimony of a

vocational expert ("VE") or by reference to the Medical-Vocational Guidelines, 20 CFR Part

404, Subpart P, Appendix 2.  If the Commissioner demonstrates a significant number of jobs

exist in the national economy that the claimant can do, then the claimant is not disabled.  If the

Commissioner does not meet this burden, the claimant is disabled.  20 CFR §§ 404.1520(f)(1),

416.920(f)(1).

At steps one through four, the burden of proof is on the claimant.  *Tackett*, 180 F3d at

1098.  At step five, the burden shifts to the Commissioner to show that the claimant can perform

jobs that exist in significant numbers in the national economy.  *Id*

**ALJ's DECISION**

At step one, the ALJ found Davis had engaged in work activity since the alleged onset of

her disability by running a child day care center in her home until March 2003, but apparently

did not find that it was substantial gainful activity.  In any event, the ALJ proceeded with the evaluation process.

At step two, the ALJ found Davis had the medically determinable severe impairments of degenerative disk disease, a history of left tibia fracture status post reduction/internal fixation, borderline intellectual functioning, major depressive disorder, personality disorder and somatoform disorder.   This finding is not in dispute.

At step three, the ALJ found that Davis's impairments did not meet or medically equal the criteria of any listed impairments.   The ALJ determined that Davis had the residual functional capacity to perform light work that allows her  periodically to alternate between sitting and standing, that does not require any repetitive pushing or pulling with her left leg, that does not require more than occasional climbing, crouching, crawling, kneeling, or stooping, that avoids vibrations, that is simple routine work, and that has no more than occasional public contact.  This finding is in dispute.

At step four, the ALJ found that Davis was not fully credible but did not retain the residual functional capacity to return to her past relevant work.

At step five, the ALJ found that Davis retained the capacity to perform work existing in significant numbers in the national economy, specifically noting the position identified by the vocational expert of surveillance system monitor.  As a result, he found Davis not disabled within the meaning of the Act.

## DISCUSSION

Davis contends that the ALJ erred by (1) finding her not fully credible; (2) failing to credit the opinion of the examining psychologist; (3)  improperly rejecting lay witness

testimony; (4) relying on an inadequate hypothetical; and (5) finding that Davis's child care

constituted substantial gainful activity.[1]  Because this matter must be remanded for consideration

of the psychological reports, the court need not address the other asserted errors.

## I.  Medical Evidence

Born in 1961, Davis was 40 years old at the time of her alleged onset date.  She

completed the eighth grade.  Tr. 33.[2]  She has worked as a sanitation worker, feeder packer, and

fork lift operator.  Tr. 266. The medical records accurately set forth Davis's medical history as it

relates to her claim for benefits.  The court has carefully reviewed the extensive medical records,

and the parties are familiar with them.  Accordingly, the details of those medical records will not

be recounted here.

## II.  Psychological Evidence

In February 2003 Tom M. Dooley, Psy. D. conducted a psychological assessment of

Davis, and administered the Wechsler Adult Intelligence Scales-III ("WAIS-III") and the Million

Clinical Multiaxial Inventory-Third Edition ("MCMI-III").  Tr. 372-79.  The results of the

WAIS-III indicated that Davis's overall intellectual functioning falls in the Low Borderline

Range, at the 4th percentile.  Tr. 376.  Her verbal abilities score was at the 3rd percentile, her

nonverbal scores were at the 7th percentile, both in the Low Borderline Range.  Ms. Davis's

verbal comprehension score was at the 1st percentile, her perceptual organization abilities were at

---

[1] Defendant does not argue that the ALJ found Davis's childcare work constituted substantial gainful activity. Since the ALJ completed the sequential analysis, this court will review that analysis as if the ALJ had specifically found that the childcare work did not constitute substantial gainful activity.

[2] Citations are to the page(s) indicated in the official transcript of the record filed with the Commissioner's Answer.

the 12th percentile, and her working memory fell at the 18th percentile.  *Id*  Dr. Dooley noted that

her scores suggested "extreme difficulties with abstract thinking and comparisons," and that she

scored in the 2nd percentile on the information subtest, "indicating a paucity of education and

porous general knowledge."  *Id*

The MCMI-III is designed to identify primary character traits, and Ms. Davis's results

indicated Somatoform Disorder, major depression and anxiety, and dependent and avoidant

personality traits.  Tr. 377.  Dr. Dooley assessed a Global Assessment of Functioning ("GAF")

score of 51[3]."  *Id.*  Dr. Dooley noted "Due to her Borderline IQ and limited social adaptive

abilities, the likelihood of working in a public setting successfully, is very unlikely."  Tr. 379.

As to Dr. Dooley's report, the ALJ stated:

> ...Dooley...reported diagnoses of major depression disorder with anxiety,
> personality disorder, undifferentiated somatoform disorder and borderline
> intelligence level.  Dr. Dooley noted the results of the WAIS-III test in-
> dicated the claimant had a full-scale IQ of 73, but further noted the claimant
> had a significant work history and that she was currently running a day-care
> at her home.  [Citation omitted].  This evaluation did not opine the claimant
> was unable to work, but chose to pursue being self-employed.

Tr. 23.

The ALJ implicitly rejected Dr. Dooley's opinion that Davis's borderline IQ and "limited social

adaptive abilities" would cause her to have significant difficulty working in a public setting.

---

[3] The GAF scale is a tool for "reporting the clinician's judgment of the individual's overall level of functioning."  American Psychiatric Ass'n., Diagnostic and Statistical Manual of Mental Disorders 32 (4th ed. 2000)).  It is essentially a scale of zero to 100 in which the clinician considers "psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness," not including impairments in functioning due to physical or environmental limitations.  *Id* at 34.  A Global Assessment of Functioning ("GAF") score between 51 and 60 indicates "Moderate symptoms (e.g. flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational or school functioning (e.g., few friends, conflicts with peers or co-workers)."  *Id*

The ALJ must have specific and legitimate reasons for rejecting the opinion of a psychological examiner. *Tonapetyan v. Halter,* 242 F3d 1144 (9th Cir. 2001).  In this case, the ALJ said that Dr. Dooley noted the claimant had a significant work history and that she was running a day care business from her home, apparently in contradiction to the limitations imposed by the borderline intelligence and limited social adaptive abilities.  As to her work history, Dr. Dooley stated that Davis had worked as a fork lift driver for ten years, until she was injured in an accident. Tr. 373.  Davis returned to the job on light duty for approximately one year, but was laid off due to absenteeism arising from her back pain.  Subsequent attempts to find work were unsuccessful "due to her poor education and physical condition." *Id*  As to the day care, Dr. Dooley stated that Davis was taking care of three children, but "can only do this with the help of her son.  She stated that she might have to stop the day care when her son moves from her house.  She is currently not looking for jobs because she wants to 'try to make it with the day care.'"  *Id*  Davis testified that she provided care for her granddaughter and her granddaughter's siblings with the assistance of her son and her in-laws.  Tr. 59.  She was alone with the children for 30 to 45 minutes per day.  *Id*  Davis testified that she did not sit with the children, but changed between seated and standing or walking positions.  When her son obtained a second job and was unable to assist her, Davis stopped caring for the children.  Tr. 73.  Based on the foregoing, it appears that the ALJ mischaracterized the testimony regarding Davis's work as a child care provider and ignored or rejected Dr. Dooley's opinion.

The  VE testified that a hypothetical individual with the ability to lift twenty pounds occasionally and ten pounds frequently, the ability to stand or walk at least two hours in an eight hour day, who must alternate between sitting and standing to relieve pain or discomfort, with a

simple routine work environment and only occasional public contact could not perform any of

Ms. Davis's past relevant work.  Tr. 80.  If such a hypothetical person were allowed to change

positions at will and had no or limited public contact, they would be capable of working as a

surveillance system monitor.  Tr. 81.  Surveillance system monitor was the only job the VE

identified consistent with the described limitations.  Tr. 82.[4]  However, the VE testified that a

person with a verbal comprehension score at the first percentile, with extreme difficulties with

abstract thinking and comparisons, would be unable to perform the work of a surveillance system

monitor.  Tr. 86-87.

The ALJ failed to offer specific and legitimate reasons to reject Dr. Dooley's

uncontradicted diagnosis.  However, there is no clear testimony from the vocational expert that

the limitations found by Dr. Dooley render Davis unable to engage in any work.  *Harman v.*

*Apfel,* 211 F3d 1172, 1180 (9th Cir 2000).  Further, the VE testimony is ambiguous as to the

impact of Davis's overall intellectual functioning on her ability to maintain employment.

Accordingly, this matter should be remanded for additional proceedings.

## RECOMMENDATION

For these reasons, the Commissioner's decision should be reversed and remanded

pursuant to sentence four of 42 USC § 405(g) for further administrative proceedings consistent

with these findings.

---

[4] The testimony is ambiguous as to whether there are "significant numbers" of unskilled surveillance system monitor positions in the local economy.  The VE testified that there were 59,000 surveillance system monitor positions nationwide, but did not distinguish between skilled and unskilled positions.  Tr. 81, 88-89.  The VE testified that there were 1,000 monitor positions in the local economy, of which only 188 are unskilled.  *Id*  The ALJ should clarify this issue on remand.

9  - FINDINGS AND RECOMMENDATION

SCHEDULING ORDER

Objections to the Findings and Recommendation, if any, are due June 21, 2006.  If no objections are filed, then the Findings and Recommendation will be referred to a district court judge and go under advisement on that date.

If objections are filed, then a response is due within 10 days after being served with a copy of the objections.  When the response is due or filed, whichever date is earlier, the Findings and Recommendation will be referred to a district court judge and go under advisement.

Dated this 8th day of June, 2006.

/s/ Paul Papak
PAUL PAPAK
United States Magistrate Judge

10  - FINDINGS AND RECOMMENDATION